# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 10-31967
 Chapter 13
TONY P. HUDSON
LISA HUDSON,

    Debtors.
_____

TONY P. HUDSON,

    Plaintiff,

v.  Adv. Proc. 13-03114

PRIMESOUTH BANK,

    Defendant.

## MEMORANDUM OPINION

    In this adversary proceeding, Tony P. Hudson (hereinafter "Hudson" or "Plaintiff") asserts three claims against the PrimeSouth Bank (hereinafter "PrimeSouth" or "Defendant").[1] Count 1 alleges a willful violation of the automatic stay. Count 2 alleges a violation of the codebtor stay. Count 3 seeks to avoid certain post-petition transfers.

    Trial was scheduled for January 22, 2015. On that day, the parties advised the Court that the relevant facts were undisputed, and the parties requested time to file a joint stipulation of facts and their respective briefs of law. Upon the filing of these factual stipulations and briefs, the Court took the matter under submission. For the reasons stated herein, judgment will be for the defendant as to all three counts of the complaint.

---

    [1]The original complaint asserted a fourth count alleging fraud. The plaintiff, however, has withdrawn that count of the complaint.

## JURISDICTION

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). The complaint alleges violations of the automatic stay and the codebtor stay, and seeks the avoidance of post-petition transfers. All of these claims are core proceedings under 28 U.S.C. § 157. Therefore, this court's jurisdiction extends to the entry of a final order or judgment.

## STIPULATED FACTS

The parties have filed a joint stipulation of facts (Doc. #41). The court adopts the parties' stipulation as the facts in this case and summarizes them as follows.

On April 2, 2009, Hudson borrowed $6,838.50 from PrimeSouth. The note evidencing that loan was for a six month term and was secured by Hudson's Dodge Durango and Toyota Sequoia, and by a certificate of deposit belonging to William Sellers (hereinafter "Sellers"). Sellers also personally guaranteed Hudson's note to PrimeSouth.

One year later, April 2, 2010, Hudson borrowed $6,203.00 from PrimeSouth. The note evidencing this second loan was, like the first, for a six month term. Also, like the first note, the second note was secured by Hudson's Dodge Durango and Toyota Sequoia, and by a certificate of deposit owned by Sellers. Sellers personally guaranteed Hudson's second note. The proceeds of this note paid off the original note of April 2, 2009.

On July 23, 2010, Hudson filed a chapter 13 petition for relief in this court. Hudson listed PrimeSouth as a secured creditor showing that the debt was secured by his Toyota Sequoia, but he did not mention that the debt was further secured by his Dodge Durango or Seller's certificate of deposit.

Although both of Hudson's notes with PrimeSouth and the documents related thereto reflected PrimeSouth's address as 3836 US Highway 231, Wetumpka, Alabama 36093, Hudson's bankruptcy schedules showed

PrimeSouth's address as P.O. Box 1310, Wetumpka.[2]  As a result, PrimeSouth did not receive notice of Hudson's bankruptcy filing that was mailed to all creditors through the Bankruptcy Noticing Center.

Hudson's chapter 13 plan was confirmed on November 5, 2010.  That plan provided for the payment of the PrimeSouth claim in full, but instead of interest at the contract rate, the confirmed plan provided for interest at the lesser rate of 4.75 %.

On November 22, 2010, PrimeSouth mailed a statement to Hudson reflecting the overdue loan balance and requesting payment.  On December 22, 2010, Hudson's bankruptcy attorney notified PrimeSouth by mail advising that Hudson was in bankruptcy.  That letter was addressed to PrimeSouth's physical address and was received by PrimeSouth.

On January 4, 2011, PrimeSouth filed a $6,203.00 proof of claim in Hudson's bankruptcy case.

On January 28, 2011, Sellers borrowed $6,646.77 from PrimeSouth.  That loan was made for the purpose of paying off Hudson's outstanding note, which Sellers had guaranteed.  The Sellers note states, "[t]he purpose of this loan is PAYOFF #1388411 .... ANTHONY P. HUDSON."

The only evidence of the circumstances surrounding Sellers paying off Hudson's note is the testimony of Jimmy Monk, an officer of PrimeSouth.  In deposition, Monk testified that "Mr. Sellers came to me and was concerned about honoring his commitment that he had made when Mr. Hudson got the loan and wanted to take care of it and offered this as a suggestion to do it, and I did not see any harm in doing so."

Following Sellers paying off of Hudson's note, PrimeSouth did not withdraw its claim against Hudson in the bankruptcy proceeding.  Instead, PrimeSouth continued to receive plan payments from the chapter 13 trustee and applied those payments to Sellers' note.  Sellers did not file a claim in Hudson's bankruptcy case.

---

[2]Although PrimeSouth had at one time used P.O. Box 1310, it had discontinued using that post office box by the time it made loans to Hudson on April 2, 2009.  By the time of Hudson's bankruptcy, the Postal Service had discontinued forwarding PrimeSouth's mail from the post office box to the physical address.

On May 19, 2011, Sellers' note was renewed in the amount of $6,460.77. This second/renewal note was for a 12 month term.

On May 23, 2012, Sellers' note was renewed again; this time in the amount of $3,596.74. This second renewal was for a 14 month term. Sellers' payment on this note was fixed at $275 each month, the exact amount that PrimeSouth was receiving from the chapter 13 trustee as a result of its claim in Hudson's bankruptcy.

In January 2013, the chapter 13 trustee remitted a final plan payment to PrimeSouth on its claim against Hudson. This final payment was applied to the Sellers' loan. Indeed, all trustee payments received by PrimeSouth, post Sellers paying off Hudson's loan, were applied to the Sellers' note and renewals.

About six months after the last trustee payment, Hudson went to PrimeSouth and requested that the certificates of title for the vehicles, which had been pledged to secure the loan, be released. Hudson spoke with Jimmy Monk, a bank officer, and Hudson secretly recorded the conversation. There, Monk told Hudson that Sellers, who was by now deceased, had paid off Hudson's note to PrimeSouth. Monk expressed surprise that Hudson was not aware that Sellers had done so. Further, Monk suggested that Hudson do the right thing and notify Sellers' widow. Monk asked Hudson if he had given Ms. Sellers any money since Sellers' death. Monk advised Hudson that the Sellers had paid the difference between what had been paid through the chapter 13 trustee and Hudson's debt, some $816.53.[3] Finally, Monk told Hudson that he, Monk, would let Sellers' widow know that Hudson had received the vehicles certificates of title and advise her that Hudson may contact her.

CONCLUSIONS OF LAW

Count 1: Willfull Violation of the Automatic Stay

Hudson alleges that PrimeSouth willfully violated the automatic stay of

---

[3]Recall that while Hudson's plan provided for the full payment of PrimeSouth's claim, it did not pay interest at the contract rate. The $816.53 was the difference in the two rates of interest.

11 U.S.C. § 362. That section of the Code provides in relevant parts:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of–
>
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> >
> > (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(3) and (6).

"The filing of a petition in bankruptcy 'operates as a stay... of ... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.'" *Swilling v. ACA Fin. Servs. (In re Swilling)*, 2008 Bankr. LEXIS 3214, 2008 WL 4999090 (Bankr. M.D. Ala. Nov. 20, 2008)(quoting 11 U.S.C. § 362(a))(Sawyer, J). "A violation of the automatic stay is willful if the Debtor establishes, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation." *Id.* (citing *Johnson v. Smith (In re Johnson)*, 504 F.3d 1163, 1171 (10th Cir. 2007). Specific intention to violate the automatic stay is not required. *Id.* (citing *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999). "[T]he Plaintiff must show two things: (1) that the petition had been filed; and (2) that the Defendants committed an act to obtain possession of property of the estate." *Smith v. Homes Today, Inc. (In re Smith)*, 296 B.R. 46, 53 (Bankr. M.D. Ala. 2003)(Sawyer, J). *See generally Carver v. Carver,* 954 F2. 1573 (11th Cir. 1992), *cert denied*, 506 U.S. 986 (1992); *see also Jove Eng'g, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1555 (11th Cir. 1996).

Hudson contends that PrimeSouth willfully violated the automatic stay when it did not withdraw its proof of claim in Hudson's bankruptcy proceeding once Sellers paid off Hudson's debt to PrimeSouth. By its failure to withdraw its claim, Hudson asserts that PrimeSouth violated the stay by obtaining possession of property of the estate (disbursements under Hudson's chapter

13 plan) after its claim had been satisfied by Sellers. The court is not convinced.

Under 11 U.S.C. § 509, a codebtor, guarantor, who pays the claim of a creditor against the debtor, is subrogated to the rights of such creditor. That section provides in relevant part:

> (a) ..... an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a).

Once Sellers paid PrimeSouth, he stood in the shoes of PrimeSouth with respect to its claim against Hudson. While PrimeSouth did not withdraw its claim, nor did Sellers file one, the evidence, here, is that all trustee payments, post Sellers paying Hudson's debt to PrimeSouth, were credited to Sellers' loan. In fact, the installment payments on Sellers' loan to PrimeSouth matched exactly the amount of the monthly disbursement made on the PrimeSouth's claim by the chapter 13 trustee. Clearly, PrimeSouth, in concert with Sellers, acted as a mere conduit crediting the monies that it received from the chapter 13 trustee to Sellers' outstanding loan. Therefore, PrimeSouth did not violate the automatic stay by wrongfully obtaining possession or control of property of the estate.

Secondly, Hudson contends that PrimeSouth willfully violated the automatic stay by attempting to collect the prepetition debt. That attempt to collect, according to Hudson, was through statements made by PrimeSouth's officer, Monk, to Hudson. Again, the court is not convinced.

Hudson went to PrimeSouth, uninvited, in order to obtain release of his vehicle titles. Nothing in the secret recording of Hudson's conversation with Monk indicates that Monk refused to deliver the titles to those vehicles. Hudson, however, maintains that Monk tried to collect the prepetition debt suggesting that Hudson may want to do the "right thing" with respect to Sellers' widow and see her regarding the $816.53 that Sellers had paid over and above the amount paid on the claim by the chapter 13 trustee. The court is impressed that Monk was simply informing Hudson that Sellers had paid Hudson's debt to PrimeSouth in full and that Hudson had paid through his

bankruptcy $816.53 less than that amount. Nothing in the Monk/Hudson conversation hints at Monk's trying to collect the prepetition claim of Primesouth. To the extent that Hudson believed that Monk's statements were an effort to collect Primesouth's debt or a debt now owed to Sellers' estate, he is hypersensitive.

Count 2: Violation of the Codebtor Stay

Hudson contends that PrimeSouth violated the codebtor stay of 11 U.S.C. § 1301. That section of the Code provides in relevant part:

> (A) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor .....

11 U.S.C. § 1301(a).

Nothing in this record, however, indicates that PrimeSouth initiated any action against Sellers in connection with Hudson's debt. To the contrary, the record makes clear that Sellers took action, of his own initiation and volition, to pay PrimeSouth for Hudson's debt. Such action was not prompted or urged by PrimeSouth and as a result, PrimeSouth did not violate the codebtor stay of § 1301.

Count 3: Avoidance of Post-Petition Transfers.

Hudson's final claim seeks to avoid transfers made to PrimeSouth under Hudson's plan by the chapter 13 trustee after Sellers had paid off Hudson's debt to PrimeSouth. 11 U.S.C. § 549 controls and provides in relevant part:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–
>     (1) that occurs after the commencement of the case; and
>     (2)(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

Hudson's theory here is that by accepting plan payments from the trustee after its claim had been paid by Sellers, PrimeSouth received post-petition estate funds to which it was not entitled. Again, the court disagrees.

As explained earlier in connection with Hudson's claim that PrimeSouth violated the stay by exercising control over estate property to which it was not entitled, PrimeSouth served as a conduit through which plan payments were credited for Sellers' benefit.

The confirmed plan provided for the payment of Hudson's debt to PrimeSouth. When Sellers, as a guarantor, paid that debt, he was subrogated to the rights of PrimeSouth. The guarantor's payment of the debt did not extinguish the claim. Therefore, trustee disbursements made after Sellers' payment of Hudson's debt to the bank were authorized by the court when it confirmed Hudson's chapter 13 plan.

As a result of Sellers paying off Hudson's debt to PrimeSouth, Hudson paid not one cent more than he would have had Sellers not paid off the debt. It would be completely illogical to avoid the transfers to PrimeSouth (which it had credited to Sellers) in order to pay those funds to Sellers or his decedent estate. Such would result in Sellers being paid twice. Again, a completely illogical result. Therefore, Hudson cannot recover under his § 549 claim.

CONCLUSION

For the foregoing reasons, the court finds that PrimeSouth did not violate the automatic stay of § 362, did not violate the codebtor stay of § 1301, and that certain post-petition transfers made to PrimeSouth could not be avoided under § 549. Judgment for the defendant on all counts of the complaint will enter separately.

Done this the 9th day of April, 2015.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Anthony B. Bush, Plaintiff's Attorney
Earl Gillian, Jr., Defendant's Attorney
Trustee